UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LLOYD X. MOSLEY, | § | |
|    *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-1042 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
|   DIRECTOR OF THE TEXAS DEPARTMENT | § | |
|   OF CRIMINAL JUSTICE - CORRECTIONAL | § | |
|   INSTITUTIONS DIVISION, | § | |
|    *Respondent*. | § | |

## MEMORANDUM, RECOMMENDATION, AND ORDER

This habeas case challenges a state prison disciplinary proceeding. Respondent Nathaniel Quarterman has filed a motion for summary judgment (Dkt. 13), to which petitioner Lloyd Mosley has responded (Dkt. 17). The court recommends that summary judgment be granted and Mosley's petition be dismissed with prejudice.[1]

### Background

Mosley is currently serving a life sentence in Texas state prison for aggravated robbery. On May 28, 2007, Mosley allegedly disrupted a count of inmates and threatened a corrections officer. Prison officials subsequently charged Mosley with three disciplinary offenses: (1) threatening to inflict harm on an officer, (2) creating a disturbance, and (3) refusing or failing to obey orders. After a brief disciplinary hearing, a hearing officer found Mosley guilty of all the charges on June 1, 2007. The officer assessed Mosley's punishment

---

[1] In light of the court's recommendation, all of Mosley's nondispositive motions are dismissed as moot. *See* Dkts. 3 and 12.

at: (1) fifteen days solitary confinement, (2) forty-five days commissary restriction, (3) forty-five days cell restriction, (4) reduction in time-earning class to Line 2, and (5) loss of thirty days good-time credit.

On June 4, 2007, Mosley submitted a step one grievance. His step one grievance was denied on June 19, 2007. On June 27, 2007, Mosley appealed the denial of his step one grievance by filing a step two grievance. His step two grievance was denied on September 4, 2007. Mosley then filed this federal habeas petition on April 2, 2008.

## Analysis

Mosley claims[2] his right to due process was violated by (1) the hearing officer's bias, (2) the hearing officer's refusal to let him present witnesses in his defense, (3) the hearing officer's failure to state the reasons for the particular punishment imposed, (4) his counsel substitute's failure to adequately represent him at the disciplinary hearing, (5) his failure to receive an impartial grievance review, and (6) the lack of sufficient evidence to support the finding of guilt.[3]

---

[2] Mosley also asserts that the disciplinary hearing somehow violated his right to equal protection of the laws. This allegation is entirely conclusory and, accordingly, the court denies it. *See, e.g.*, *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding.").

[3] Quarterman argues that the court cannot reach the merits of parts of Mosley's claims because they are procedurally defaulted. The court declines to rule on the issue of procedural default and instead chooses to deny Mosley's claims on the merits. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (courts can deny a habeas claim on the merits despite the existence of a procedural default).

**Punishments of Solitary Confinement, Commissary Restriction, Cell Restriction, and Reduction in Time-Earning Class**

Incarceration is meant to punish offenders not only by taking away their liberty but also by taking away other procedural and substantive rights that free persons enjoy. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995). The Supreme Court, sensitive to both the punitive purpose of incarceration and the need for states to manage their prisons with minimal court interference, has held that only certain forms of punishment—regardless of the procedures by which they are imposed—implicate the protections of the Due Process Clause. *See id.* at 483-85. Specifically, only punishments that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" receive Due Process Clause scrutiny. *Id.* at 484.

The fifteen days of solitary confinement that Mosley suffered is not such an atypical and harsh punishment. *See id.* at 486 (thirty days of solitary confinement does not implicate the Due Process Clause). Neither are the forty-five days of commissary restriction, the forty-five days of cell restriction, or the change in time-earning class. *See Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000) (change in time-earning class is not a punishment that implicates the Due Process Clause); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (commissary and cell restrictions are not punishments that implicate the Due Process Clause). Therefore, to the extent that Mosley raises a Due Process Clause challenge to the procedures that resulted in these punishments, his challenges must fail.

3

**Loss of Good-Time Credit**

The Constitution does not give prisoners the right to earn good-time credits. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). But states can give prisoners that right. When states enact statutes that give prisoners the right to earn good-time credits and allow them to be taken away for misbehavior, the Due Process Clause protects against their arbitrary deprivation. *Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007). The reason is that good-time credits bestowed under such statutes give prisoners a "liberty interest" in their early release. *See Malchi*, 211 F.3d at 957; *Madison*, 104 F.3d at 768.

In Texas, there are two ways prisoners can be released early: parole and mandatory supervision. *Teague*, 482 F.3d at 774.

Because Texas's parole statute leaves the decision of whether to grant parole up to the "total and unfettered discretion of the State," it does not give prisoners who possess good-time credits a liberty interest in their early release on parole. *Id.* As a result, the Due Process Clause does not protect against the arbitrary deprivation of good-time credits insofar as it might affect the state's parole decision.

In contrast, mandatory supervision gives the state little or no discretion in deciding whether to release a prisoner early. *Id.* at 774-75. Under the current mandatory supervision statute, which became effective September 1, 1997, the state must release a prisoner whose time served and good-time credits equal his prison sentence unless (1) the prisoner is serving a sentence for or has previously been convicted of a specified list of crimes or (2) a panel

4

determines that (a) the prisoner's good-time credits are "not an accurate reflection of the inmate's potential for rehabilitation" and (b) the prisoner's release "would endanger the public." *See* TEX. GOV'T CODE ANN. §§ 508.147, 508.149 (Vernon 2004). Under the previous mandatory supervision statute, which applies to Mosley because he committed his crime in 1989, there was no provision for a panel determination. *See* TEX. CODE CRIM. PROC. ANN. art. 42.18 § 8(c) (Vernon Supp. 1990); *Ex parte Hall*, 995 S.W.2d 151, 152 (Tex. Crim. App. 1999) (eligibility for mandatory supervision determined by statute in effect at the time the crime was committed). Instead, the state was required to release a prisoner whose time served and good-time credits equaled his prison sentence unless he was serving a sentence for a specified list of crimes. *See* TEX. CODE CRIM. PROC. ANN. art. 42.18 § 8(c) (Vernon Supp. 1990). Because the state has little to no discretion under these mandatory supervision statutes, prisoners who possess good-time credits have a liberty interest in their early release provided they are otherwise eligible for mandatory supervision. *See Teague*, 482 F.3d at 776 (possession of good-time credits under current mandatory supervision statute gives prisoners a liberty interest in their early release); *Malchi*, 211 F.3d at 957-58 (possession of good-time credits under prior mandatory supervision statute gives prisoners a liberty interest in their early release).

Mosley's good-time credits, however, do not give him a liberty interest in early release because he is ineligible for mandatory supervision. There are two reasons why. First, a prisoner who is sentenced to life imprisonment can never be eligible for mandatory

5

supervision because his time served and good time credits will never equal his life. *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002) (citing *Ex parte Franks*, 71 S.W.3d 327, 328 (Tex. Crim. App. 2001)). Second, Mosley's crime, aggravated robbery, is one of the specified crimes under the pre-1997 mandatory supervision statute for which early release is unavailable. TEX. CODE CRIM. PROC. ANN. art 42.18 § 8(c)(11) (Vernon Supp. 1990) (making prisoners convicted of aggravated robbery ineligible for release under mandatory supervision). Because Mosley is ineligible for early release under mandatory supervision, his loss of good-time credits does not violate a liberty interest in early release protected by the Due Process Clause.

## **Conclusion**

For the foregoing reasons, the court recommends that summary judgment be granted and Mosley's petition dismissed with prejudice.

Additionally, the court finds that Mosley has not made a substantial showing that jurists of reason would find it debatable whether he has been denied a constitutional right or whether the court is correct in its procedural ruling. Therefore, the court recommends that certificate of appealability should not issue. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The parties have ten days from the service of this Memorandum and Recommendation to file written objections. Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See* 28 U.S.C. § 636(b)(1)(c) (2006); Fed. R. Civ. P. 72.

Signed at Houston, Texas on November 20, 2008.

*[signature]*
Stephen Wm Smith
United States Magistrate Judge